UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KEITH GOODSON,<br><br>                    Plaintiff,<br><br>       v.<br><br>TRIUMPH COMPOSITE SYSTEMS,<br><br>                    Defendant. | NO:  13-CV-0289-TOR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Defendant's Motion for Summary Judgment (ECF No. 20).  This matter was heard with oral argument on December 5, 2014. Larry J. Kuznetz appeared on behalf of Plaintiff.  James M. Kalamon and Shamus T. O'Doherty appeared on behalf of Defendant.  The Court has reviewed the briefing and the record and files herein and heard from counsel, and is fully informed.

//

//

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 1

**BACKGROUND**

This case concerns Plaintiff's claims of disability discrimination and retaliation in violation of state and federal law arising from his former employment with Defendant Triumph Composite Systems. Defendant now moves for summary judgment on all claims. ECF No. 20. For the reasons discussed below, this Court finds Defendant is entitled to summary judgment on all claims.

**FACTS**

Plaintiff Keith Goodson began working for Defendant Triumph Composite Systems[1] in 2008 as a Senior Manager Lean Consultant. ECF Nos. 21 at 2; 34 at 3. In his position as senior manager, Plaintiff developed, organized, coordinated, and conducted lean manufacturing training.[2] ECF Nos. 21 at 3; 33-1 at 3; 34 at 3. Plaintiff was also responsible for managing multiple employees. ECF Nos. 21 at 3; 22-1 at 6-7; 34 at 4. Both parties agree that the senior manager position required "superior communication skills," both written and oral, and an ability to motivate

---

[1] Triumph Composite Systems is a subsidiary of Triumph Group. ECF No. 21 at 2.

[2] Lean manufacturing is a business improvement strategy with tools and methodologies to help transform businesses, often in the manufacturing context. ECF Nos. 21 at 2-3; 34 at 2.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 2

1   individuals to become involved and to facilitate group learning and problem

2   solving.  ECF Nos. 21 at 7; 22-1 at 7-9; 22-6 at 2-3; 33-1 at 8; 34 at 4.

3        In mid-2010, Plaintiff began having shoulder pain, as well as tingling in his

4   hands and arms.  ECF Nos. 33-1 at 31; 34 at 12.  Plaintiff was subsequently

5   diagnosed with moderate left and moderate to severe right foraminal stenosis in his

6   neck, which Plaintiff's doctor opined could be the origin of his shoulder pain.  ECF

7   Nos. 32-2 at 3; 34 at 12.  As a result of his shoulder condition, Plaintiff would

8   experience periodic episodes of "breakthrough" pain.  ECF No. 34 at 12.  Initially,

9   Plaintiff utilized physical and massage therapy to alleviate his pain.  ECF No. 33-1

10  at 134.  When that proved ineffective by itself, Plaintiff's medical provider

11  prescribed pain medication, initially Hydrocodone and then later Oxycodone, to

12  help alleviate his pain.  ECF Nos. 32-2 at 2-3; 33-1 at 32; 34 at 12.

13       In January 2011, Plaintiff disclosed his Hydrocodone use to a Human

14  Resources ("HR") representative who, in turn, informed Plaintiff that he could not

15  come to work under the influence of certain types of prescription pain medication,

16  such as Hydrocodone or Oxycodone.[3]  ECF Nos. 33-1 at 33; 34 at 13.  Without the

17  [3] Plaintiff contends his health care provider opined he could fully perform his job

18  duties after taking medications and drafted a medical release to that effect.  ECF

19  Nos. 32-2 at 5; 34 at 13.  According to Plaintiff, he informed HR of this medical

20  release.  ECF No. 30 at 4.  Plaintiff further contends that there was not a work

1  ability to take his medication before or during work, Plaintiff missed work on days

2  when his pain was so severe he would have to take medication in the morning.

3  ECF Nos. 33-1 at 34; 34 at 13.

4      In August 2011, Plaintiff applied for and was granted two days of Family

5  Medical Leave Act ("FMLA") leave per month to cover the days he missed for his

6  pain and corresponding treatment.  ECF No. 34 at 13.  Although the parties dispute

7  the number of days Plaintiff was regularly missing per month, Plaintiff contends he

8  would miss work two to four times per month for his pain, as well as for medical

9  appointments.  ECF Nos. 21 at 5; 34 at 14, 16.

10      In February 2012, Plaintiff, upon suggestion by an HR representative,

11  requested an increase in his FMLA leave to ten days per month to cover the

12  additional days he was missing per month.  ECF Nos. 21 at 3; 34 at 14.

13  Unbeknownst to Plaintiff, this request for an increase in leave was denied due to an

14  incomplete medical certification.[4]  ECF Nos. 21 at 3-4; 34 at 14; *see* ECF No. 22-

_____

15  policy in place that prevented Plaintiff from working while taking prescription

16  medication.  ECF No. 34 at 14.  Defendant, on the other hand, contends Plaintiff

17  never provided Defendant with any information regarding his ability to work while

18  under the influence of prescription pain medication.  ECF No. 36 at 3.

19  [4] Plaintiff disputes that there is any evidence to demonstrate his application was

20  deficient and found to be incomplete.  ECF No. 34 at 18.  Nonetheless, a copy of

4.  The parties dispute whether Plaintiff was informed by Liberty Mutual Insurance Company, the entity in charge of administering Triumph's FMLA leave, of this deficiency.  ECF Nos. 21 at 4; 34 at 14; 36 at 4.  Nonetheless, Plaintiff either did not exceed the two days he was granted per month, or if he did, these requests were approved by Plaintiff's direct supervisor, Pat Jones.  ECF Nos. 21 at 4; 21-1 at 17; 36 at 4.[5]  It was not until around July 2012 that Plaintiff allegedly became aware that his request for increased leave was never granted.  ECF No. 34 at 14-15.  In response, Plaintiff spoke with an HR representative about his unapproved request to expand his FMLA leave, who in turn explained to Plaintiff that his medical authorization was incomplete.  ECF Nos. 1-1 at 6; 30 at 6; 36 at 3.

---

the medical certification demonstrates that the provider failed to complete the "Medical Facts" section.  ECF No. 22-4.

[5] Plaintiff contends he never asked for permission to leave, assuming, albeit incorrectly, that his FMLA-leave was pre-approved.  ECF No. 34 at 18.  Defendant contends Mr. Jones approved every day Plaintiff was out on leave because although Plaintiff had obtained pre-approved FMLA leave, Mr. Jones, as Plaintiff's supervisor, was responsible for approving Plaintiff's time entries.  ECF No. 36 at 4-5; *see* ECF No. 37-3 (depicting the process for approving leave).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 5

On July 2, 2012, Plaintiff's employment was terminated, with management citing its lost confidence in Plaintiff's abilities to manage at the senior level.[6]  ECF Nos. 1-1 at 6; 21 at 2, 13; 34 at 14-15, 21.

The central issue to this matter is the reason for Plaintiff's termination, an issue the parties greatly contest.  Plaintiff contends Defendant terminated his employment because of his extensive use of leave needed for his shoulder pain and for complaining about being denied increased leave.  ECF No. 29.  According to Plaintiff, Mr. Jones frequently asked Plaintiff how much leave he had remaining

---

[6] Plaintiff contends Defendant did not implement its own disciplinary policy when terminating Plaintiff's employment.  ECF No. 34 at 6.  In response, Defendant highlights that Plaintiff's employment was at-will and further asserts that the disciplinary policy is merely elective, not often used with employees in managerial positions, and specifically never used by Mr. Jones with managers.  ECF No. 36 at 6; *see* ECF No. 33-5 at 67 ("Under most circumstances, [Triumph] endorses a policy of progressive discipline in which it attempts to provide employees with notice of deficiencies and an opportunity to improve.  It does, however, retain the right to administer discipline in any manner it sees fit. This policy does not modify the status of employees as employees-at-will or in any way restrict [Triumph's] right to bypass or modify the disciplinary procedures suggested.").

and expressed concern about Plaintiff missing weekly manager meetings due to physical therapy.  ECF No. 34 at 15-16.

Defendant, on the other hand, contends that it had a legitimate, non-discriminatory reason for terminating Plaintiff.  According to Defendant, Mr. Jones does not recall inquiring about the frequency of Plaintiff's leave but freely granted all requests.  ECF Nos. 34 at 17; 36 at 4.  It is, after all, undisputed that Plaintiff was never denied leave.  ECF Nos. 21 at 4; 22-1 at 17.  Further, Mr. Jones contends he either moved the weekly managers' meeting or allowed Plaintiff to miss meetings when Plaintiff had a conflicting physical therapy appointment.  ECF No. 36 at 4.  Rather, Defendant contends Plaintiff was terminated due to deficient and unprofessional communication skills.  ECF Nos. 21 at 13; 34 at 17.

The following are the facts regarding Plaintiff's work performance leading up to his termination.  In the spring of 2012, Plaintiff received his performance review for the 2012 fiscal year.  ECF Nos. 21 at 8-10; 34 at 10-12.  Compared to the previous year's performance review, Plaintiff's performance score fell in several categories, including categories concerning Plaintiff's communication, leadership, and professionalism.  ECF Nos. 21 at 8-10; 34 at 11; *see* ECF Nos. 22-1 at 11-12; 22-8 at 5-6.  According to Mr. Jones, the overall reduction in Plaintiff's score directly related to the deterioration in Plaintiff's professional behavior and

communication skills.[7]  ECF Nos. 21 at 10; 22-2 at 13-14.  Subsumed within

Plaintiff's 2012 performance review were several comments explaining the

reduced rating.  For instance, Mr. Jones indicated the following regarding

Plaintiff's work performance: (1) "sometimes [Plaintiff's] communication issues

result in conflicts, slowing implementation and problem solving;" (2) "sometimes

Keith's direct approach and passion for quick action does not always foster

cooperation and teamwork across teams," (3) "Keith needs to focus on the

professionalism of his communication;" and (4) "additional focus on

professionalism, discretion, audience awareness (direct audience and peripheral

audience) are my primary concerns for Keith in this competency."  ECF No. 22-8

at 5.

---

[7] The rating definitions ranged from a numerical score of 4, which is

"Outstanding," to a score of 0, which is "Unacceptable."  ECF No. 34 at 10.  Thus,

in Plaintiff's view, his performance review, with scores between 2 and 3,

demonstrated that his performance ranged from "Effective" to "Exceeds," rather

than the lowest ratings of "Needs Development" or "Unacceptable."  *Id.* at 10-11,

19.  In response, Defendant asserts that Plaintiff's numerical score was "extremely

low for Triumph" as only one or two managers had ever scored below a 2.0 on any

rating.  ECF No. 36 at 5.

Mr. Jones discussed Plaintiff's performance review with Plaintiff in March 2012.  Mr. Jones expressed concerns regarding Plaintiff's poor communication skills and professionalism and encouraged Plaintiff to be more professional, know his audience, and not allow his frustration to show through.  ECF Nos. 21 at 10; 34 at 8; 22-1 at 12-14; 22-2 at 29-30.[8]  In response, Plaintiff agreed that he needed to work on his professionalism and communication skills and stop using profanity.  ECF Nos. 21 at 10; 22-1 at 12-13.  At Mr. Jones' suggestion, Plaintiff agreed to attend two training courses related to professional communication and leadership.  ECF Nos. 21 at 11; 34 at 10.

Defendant cites to several specific instances of Plaintiff's unprofessional conduct, conduct which Plaintiff does not necessarily dispute.  Plaintiff used profanity on several occasions when both speaking to other managers about Triumph employees and directly to employees.  ECF Nos. 21 at 11; 34 at 6-7.  Although Plaintiff attempts to explain the appropriateness of his language based on its context, he does not deny using this language in the workplace.  ECF Nos. 21 at 11-12; 34 at 6-7.  Further, Mr. Jones received two written complaints from Triumph employees regarding Plaintiff's unprofessional communication.  ECF Nos. 21 at 11-12; 22-9; 34 at 7.  Although Defendant disputes whether he

---

[8] Plaintiff contends Mr. Jones merely highlighted these issues as concerns, not grounds for termination.  ECF No. 34 at 20.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 9

1    committed the conduct underlying the complaints, ECF No. 34 at 7, it is

2    undisputed that Mr. Jones received these complaints.

3        Finally, Defendant cites to a June 2012 meeting—which included two

4    directors, two senior managers, and an individual representing the President of

5    Triumph—as the culminating event that led to Plaintiff's termination.  ECF Nos.

6    21 at 12; 34 at 9.  During this meeting, Defendant contends Plaintiff "made

7    multiple improper remarks, did not allow others to speak, failed to address the

8    questions of [the individual] representing the President of [Triumph] at the

9    meeting, and aggressively blamed upper management and [a] fellow senior

10   manager . . . in a disrespectful tone for issues which had arisen."  ECF No. 21 at

11   12.  Plaintiff admits that he engaged in a "heated argument" with a fellow senior

12   manager at this meeting.  ECF Nos. 21 at 12; 34 at 9.  After this meeting, several

13   directors and managers came forward with comments regarding Plaintiff's conduct

14   during the meeting, describing Plaintiff's behavior as "rude and inappropriate" and

15   "not match[ing] that of a senior level manager in a position of organizing and

16   leading teams to improve [Triumph]."[9]  ECF Nos. 21 at 13; 22-10 at 2-3; 22-11; 34

17

18   [9] Plaintiff contends that management "solicited" these comments. ECF No. 34 at

19   21.  However, it appears the "solicitation" component occurred during Mr. Jones

20   investigation, which arose after initial comments were received by Mr. Jones and

at 9.  Most significantly, the President of Triumph was informed about Plaintiff's behavior at the meeting and personally contacted Mr. Jones, inquiring "Do we have a problem here?"  ECF Nos. 22-2 at 8; 22-13 at 5-7.  In response, Mr. Jones conducted an investigation of the incident.  ECF Nos. 21 at 13; 22-2 at 9. Ultimately, Mr. Jones and the Director of Human Resources made the decision, on behalf of Defendant, to discharge Plaintiff.  ECF Nos. 21 at 13; 34 at 7.

## DISCUSSION

### I.    Cross-Motions for Summary Judgment

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to identify specific genuine issues of material fact which must be decided by a jury.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.

after Mr. Stevens, the President of Triumph, discussed the incident with Mr. Jones. ECF Nos. 21 at 13; 33-2 at 4-5.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Only evidence which would be admissible at trial may be considered. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

**A. Disparate Treatment Under the ADA & WLAD**

Plaintiff has asserted claims under the ADA and the WLAD for disparate treatment on the basis of a disability. Defendant has moved for summary judgment on these claims on the grounds that Plaintiff is unable to prove his prima facie case of disparate treatment and even if he were able to, Defendant had a legitimate, nondiscriminatory reason for terminating Plaintiff's employment. ECF No. 20 at 10.

To prove a claim for disparate treatment, a plaintiff may present direct evidence demonstrating that the employer's adverse employment decision was "because of" the employee's disability. *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004) (citing *Costa v. Desert Palace*, 299 F.3d 838, 852-54 (9th Cir. 2002)). To satisfy the "because of" standard under the ADA, the

plaintiff must prove that his protected characteristic played at least a "motivating factor" in the employer's adverse employment decision. 42 U.S.C. § 2000e-2(a); *Costa*, 299 F.3d at 856-57. Under the WLAD, the plaintiff must prove that his protected characteristic was a "substantial factor," meaning a "significant motivating factor," in the employer's adverse employment decision. Wash. Rev. Code § 49.60.180(2); *Scrivener v. Clark College*, 334 P.3d 541, 545 (2014) (en banc) (citing *Mackay v. Acorn Custom Cabinetry, Inc.*, 127 Wash. 2d 302, 310 (1995)). To overcome summary judgment on a WLAD or ADA claim, a plaintiff needs only to show that a discriminatory reason "more likely than not" motivated his employer's decision. *McGinest*, 360 F.3d at 1122; *Scrivener*, 334 P.3d at 545.

Alternatively, in light of the difficulty of uncovering direct evidence of discrimination, a plaintiff may assert his disparate treatment claim by providing indirect evidence of discrimination under the familiar *McDonnell Douglas* burden-shifting framework. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 n.3 (2003); *Chuang v. Univ. Cal. Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000); *Scrivener*, 334 P.3d at 546 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under *McDonnell Douglas*, a plaintiff alleging disparate treatment must first establish a prima facie case of discrimination. To establish his prima face case, a plaintiff may show that he (1) belongs to a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) similarly

situated employees outside the protected class were treated more favorably. *Chuang*, 225 F.3d at 1123; *Scrivener*, 334 P.3d at 546.  However, proof of these precise factors is not required.  *McDonnell Douglas*, 411 U.S. at 802 n.13 ("[T]he prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations.").  Rather, to establish a prima facie case, a plaintiff merely "must offer evidence that gives rise to an inference of unlawful discrimination." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (citations omitted).  This prima facie case "entitles [a plaintiff] to a commensurately small benefit, a transitory presumption of discrimination." *Costa*, 299 F.3d at 855.

Once a plaintiff has established his prima facie case, the burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for taking the challenged action.  *Chuang*, 225 F.3d at 1123.  Provided that the employer can articulate such a reason, the burden then shifts back to the plaintiff to demonstrate that the proffered reason is untrue "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).  In making such a showing, the plaintiff need not introduce additional, independent evidence of discrimination; rather, "a disparate treatment plaintiff can

survive summary judgment without producing any evidence of discrimination

beyond that constituting his prima facie case, if that evidence raises a genuine issue

of material fact regarding the truth of the employer's proffered reasons." *Chuang*,

225 F.3d at 1127 (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S.

133, 146 (2000)).

As an initial matter, Defendant does not dispute that Plaintiff was disabled

within the meaning of the ADA and the WLAD, that Plaintiff was qualified for the

senior manager position, and that Plaintiff suffered an adverse employment

decision when he was terminated.  ECF No. 20 at 9.  However, Defendant does

dispute that Plaintiff's disability was a substantial or motivating factor in its

decision to terminate Plaintiff or that Plaintiff can otherwise demonstrate any

inference of discrimination surrounding Defendant's termination decision.  *Id.* at 9-

10.

This Court finds Plaintiff has sufficiently established a prima facie case

under the *McDonnell Douglas* framework.  Although Plaintiff presents no evidence

that similarly-situated employees were treated more favorably, he only needs to

show "an inference of discrimination in whatever manner is appropriate in the

particular circumstances." *Hawn*, 615 F.3d at 1156 (citation omitted).  Plaintiff

provides the following evidence to support an inference of discrimination: (1) he

was given a discretionary merit bonus less than two months before he was

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 15

terminated; (2) he was never formally disciplined for his communication

deficiencies; (3) Defendant was aware of Plaintiff's "communication style" when it

hired him; and (4) he was fired two days after he contacted HR about his FMLA

leave.  ECF No. 29 at 8-11.  Considering the minimal standard of proof required to

establish a prima face case, *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir.

1994), this Court finds Plaintiff has established an inference of discrimination.

However, this Court finds this evidence, without more, is insufficient to

rebut Defendant's legitimate, non-discriminatory reason for terminating Plaintiff.

Defendant maintains Plaintiff was terminated in July 2012 because of Defendant's

"loss of trust and confidence in [Plaintiff's] ability to communicate professionally

and effectively with others."  ECF No. 20 at 12.  This reason is supported by the

following evidence:

> (1) written submissions, as well as a personal inquiry from Triumph's
> President to Mr. Jones, following Plaintiff's "aggressive, disrespectful
> remarks" during a June 2012 meeting with other senior managers,
> directors, and an individual representing the President of Triumph;
>
> (2) multiple incidents in which Plaintiff used profanity at work either
> directly to Triumph employees or in reference to Triumph employees,
> evidenced by written complaints and Plaintiff's own testimony;
>
> (3) Plaintiff's 2012 performance evaluation, with multiple numerical
> reductions and comments from Plaintiff's supervisor regarding Plaintiff's
> communication and professionalism;
>
> (4) Mr. Jones' counseling Plaintiff regarding issues with Plaintiff's
> communication and professionalism;

(5) Plaintiff's attendance, at the suggestion of Mr. Jones, at training courses aimed at improving his professional communication and leadership;

(6) Plaintiff's job description, which required "superior communication skills," the ability to motivate individuals to become involved, and the ability to facilitate group learning and problem solving; and

(7) Triumph's Employee Handbook, which required employees to "respect the rights of and deal fairly with . . . colleagues," "demonstra[te] a considerate, friendly and constructive attitude toward fellow employees," and which warned employees that "conduct that interferes with operations, discredits the company or is offensive to customers or coworkers will not be tolerated."

ECF Nos. 20 at 11-14; 21 at 7-13.

Plaintiff offers no additional evidence, besides the evidence presented in his prima facie case, to demonstrate that Defendant's explanation is "unworthy of credence" or that "a discriminatory reason more likely motivated" Defendant's ultimate termination decision. *See Burdine*, 450 U.S. at 256. Although Plaintiff could theoretically survive summary judgment without producing any additional evidence beyond that constituting his prima facie case, *Chuang*, 225 F.3d at 1127, the minimal evidence in support of his claim is insufficient to rebut Defendant's well-supported explanation for its employment decision. Most importantly, Plaintiff's strongest piece of evidence—that he was fired merely two days after inquiring into increased leave for his disability—creates nothing more than a weak inference of discrimination. Plaintiff offers no direct evidence to show that his FMLA inquiry to HR influenced Mr. Jones' ultimate decision to terminate

1    Plaintiff, or that Mr. Jones even knew about Plaintiff's inquiry.  Such weak

2    circumstantial evidence is insufficient to rebut Defendant's strong showing that

3    Plaintiff's termination was instead prompted by Plaintiff's communication and

4    professionalism issues, issues which culminated in the June 2012 executive

5    meeting. This Court concludes that, even construing the evidence in a light most

6    favorable to Plaintiff, there is no triable issue as to whether Defendant's reason for

7    terminating Plaintiff was legitimate and non-discriminatory.  Accordingly,

8    Defendant is entitled to summary judgment on Plaintiff's disparate treatment

9    claims.

10   **B. Failure to Accommodate Under the ADA & the WLAD**

11       Plaintiff alleges that Defendant also violated the ADA and the WLAD by

12   both failing to engage in the interactive process and accommodate his disability.

13   Defendants have moved for summary judgment on these claims on the ground that

14   Defendant provided sufficient accommodation which allowed Plaintiff to perform

15   the essential functions of his position.

16       Both the ADA and the WLAD require an employer to make reasonable

17   accommodations for an employee with a disability.  Under the ADA, an employer

18   may not "discriminate against a qualified individual on the basis of disability."  42

19   U.S.C. § 12112(a).  One form of discrimination is an employer's "not making

20   reasonable accommodations to the known physical or mental limitations of an

otherwise qualified . . . employee." *Id.* §12112(b)(5)(A).  Under the ADA, a

"qualified" individual is defined as "an individual with a disability who, with or

without reasonable accommodation, can perform the essential functions of" the

employment position.  *Id.* § 12111(8).   To state a prima facie case under the ADA

for failure to accommodate, a plaintiff must first show that he (1) is disabled within

the meaning of the ADA; (2) is a qualified individual with a disability, meaning he

can perform the essential functions of his position with reasonable

accommodation; and (3) he suffered an adverse employment action because of his

disability.  *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003); *Nunes v. Wal-*

*Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999).

The elements of a failure to accommodate claim under the WLAD are

similar.  The plaintiff must prove that (1) he had a sensory, mental, or physical

impairment that is medically recognizable or diagnosable, exists as a record of

history, or is perceived to exist; (2) the impairment had a substantially limiting

effect upon his ability to perform the job such that accommodation was reasonably

necessary; (3) he was qualified to perform the essential functions of the position;

(4) he either gave the employer notice or the employer knew of the impairment;

and (5) upon notice, the employer failed to reasonably accommodate the

impairment.  Wash. Rev. Code § 49.60.040(7); *see Hale v. Wellpinit School Dist.*

*No. 49*, 165 Wash. 2d 494, 502-03 (2009) (discussing the 2007 legislative

1   amendments to the WLAD, which redefined "disability"); *Goodman v. Boeing Co.*,

2   127 Wash. 2d. 401, 408 (1995) (discussing the notice requirement); *Johnson v.*

3   *Chevron U.S.A., Inc.*, 159 Wash. App. 18, 28-29 (Ct. App. 2010) (discussing the

4   2007 legislative amendments to the WLAD, which eliminated "medical necessity"

5   as the sole basis for a right to accommodation); *see also Riehl v. Foodmaker, Inc.*,

6   152 Wash. 2d 138, 146 (2004) (laying out the elements of a WLAD claim applied

7   by Washington courts, pre-2007 legislative amendments).

8          Under both the ADA and the WLAD, once an employer becomes aware of

9   the need for accommodation, that employer has a mandatory obligation to engage

10  in an interactive process with the employee to identify and implement appropriate

11  reasonable accommodations.  29 C.F.R. § 1630.2(o)(3); *Barnett v. U.S. Air.*, 228

12  F.3d 1105, 1114 (9th Cir. 2000) (en banc), *vacated on other grounds by* 535 U.S.

13  391 (2002); *see Goodman v. Boeing Co.*, 127 Wash. 2d 401, 408 (1995) (noting

14  that once an employee gives the employer notice of her disability, "[t]his notice

15  then triggers the employer's burden to take 'positive steps' to accommodate the

16  employee's limitations").  The Ninth Circuit has explained the employer's duty

17  regarding the interactive process as follows:

18          [T]he employer's obligation to engage in the interactive process
            extends beyond the first attempt at accommodation and continues
19          when the employee asks for a different accommodation or where the
            employer is aware that the initial accommodation is failing and further
20          accommodation is needed. This rule fosters the framework of
            cooperative problem-solving contemplated by the ADA, by

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 20

encouraging employers to seek to find accommodations that really work, and by avoiding the creation of a perverse incentive for employees to request the most drastic and burdensome accommodation possible out of fear that a lesser accommodation might be ineffective.

*Humphrey v. Mem'l Hospitals Ass'n*, 239 F.3d 1128, 1138 (9th Cir. 2001); *see also* EEOC, *Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act* (Oct. 17, 2002), *available at* http://www.eeoc.gov/policy/docs/accommodation.html#intro ("If a reasonable accommodation turns out to be ineffective and the employee with a disability remains unable to perform an essential function, the employer must consider whether there would be an alternative reasonable accommodation that would not pose an undue hardship.").

What constitutes a reasonable accommodation turns on the facts and circumstances of each case.  *Wong v. Regents Univ. Cal.*, 192 F.3d 807, 819 (9th Cir. 1999).   Reasonable accommodations can include "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position."  29 C.F.R. § 1630.2.  Permitting the use of accrued paid leave, or unpaid leave, is also a form of reasonable accommodation.  *Id.* at § 1630.2(o).  "An employer is not obligated to provide an employee the accommodation he requests

or prefers, the employer need only provide some reasonable accommodation."

*Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (citation

omitted); *Doe v. Boeing Co.*, 121 Wash. 2d 8, 20 (1993) (noting an employer is not

obligated "to offer the precise accommodation which [the plaintiff] requests").

Rather, "the employer providing the accommodation has the ultimate discretion to

choose between effective accommodations."  29 C.F.R. § 1630.2.

As an initial matter, the parties do not dispute that Defendant knew

Plaintiff's shoulder condition qualified as a disability under the ADA and WLAD,

nor do the parties dispute that Plaintiff was qualified to and could perform the

essential functions of his job with accommodation.[10]  ECF Nos. 20 at 5-6; 29 at 14.

---

[10] At first glance, Defendant also appears to dispute whether Plaintiff gave

Defendant sufficient notice of the need for accommodation.  ECF No. 20 at 5-6.

Specifically, Defendant alleges that the only accommodation Plaintiff requested to

accommodate his disability was "time off," which accommodation Defendant

freely granted.  *Id.* at 6.  This Court fails to see how this request does not constitute

sufficient notice of Plaintiff's need for accommodation.  Considering leave *is* a

form of accommodation and Defendant was aware of Plaintiff's shoulder

condition, Plaintiff provided Defendant notice of his disability and need for

accommodation, thus triggering the interactive process.  ECF No. 29 at 14.

1    The primary issue is whether, after being put on notice of Plaintiff's

2    shoulder condition, Defendant failed to accommodate Plaintiff's disability.

3    Plaintiff contends Defendant failed to accommodate his shoulder pain and engage

4    in the interactive process to find a reasonable accommodation.  ECF No. 29 at 14-

5    15.  Specifically, Plaintiff faults Defendant for not allowing him use of his

6    prescription pain medication at work.  *Id.*  Defendant counters that the only

7    accommodation Plaintiff requested was "time off" which was liberally granted,

8    allowed Plaintiff to continue performing the essential functions of his job, and

9    sufficiently satisfied its obligation under the ADA.  ECF No. 20 at 7-8.

10   This Court finds no triable issue as to whether Defendant reasonably

11   accommodated Plaintiff's disability.  Neither party disputes that Plaintiff was

12   freely granted leave when requested and that leave constitutes a reasonable

13   accommodation.  ECF No. 29 at 17 (conceding that leave is a reasonable

14   accommodation); *see* 29 C.F.R. § 1630.2.  Further, an HR representative, one of

15   Defendant's agents, even recommended that Plaintiff expand his leave to cover

16   additional days—beyond the two FMLA days he was already pre-approved for—

17   which he would have to miss due to severe pain and the need to take medication

18   before work.  Although Plaintiff's request for increased leave was not approved

19   due to a deficiency in his application, Plaintiff could not recall one occurrence

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 23

1   where he was ever denied leave, nor does Plaintiff's supervisor, Mr. Jones, ever

2   recall denying Plaintiff's requests.

3        Plaintiff's WLAD and ADA claims seem to rely on the notion that

4   Defendant should have granted his specific request to take prescription pain

5   medication either before or during work.  Although the interactive process is a

6   continuing duty, which "extends beyond the first attempt at accommodation and

7   continues when the employee asks for a different accommodation or where the

8   employer is aware that the initial accommodation is failing and further

9   accommodation is needed," *Humphrey*, 239 F.3d at 1138, it is not clear that

10  Defendant's first attempt at accommodation—granting leave—was ineffective or

11  that Plaintiff requested a different accommodation.  Besides the one meeting with

12  an HR representative, in which Plaintiff disclosed his Hydrocodone use and was

13  informed that he could not be under the influence of Hydrocodone while at work, it

14  is not clear that he ever requested this additional accommodation and disclosed that

15  the accommodation previously granted—leave—was ineffective or insufficient.

16  Thus, Plaintiff's disability was being sufficiently accommodated with leave and

17  thus the need to explore different accommodations was unnecessary.

18       Even if the evidence uncovers that Plaintiff did request permission to use

19  pain medication before or during work, the type of reasonable accommodation is

20  ultimately within the employer's discretion and does not need to be the specific

accommodation the employee requests.  Although Plaintiff would have preferred to take medication and come to work rather than taking leave, the decision is ultimately with the employer as to which accommodation to grant.  *See Zivkovic*, 302 F.3d at 1089*; 29 C.F.R. § 1630.2.  Here, Plaintiff continued to be able to perform the essential functions of his job with the accommodation of leave, *see* ECF No. 21-1 at 18; thus, there is no evidence to suggest that Plaintiff's disability was not being effectively accommodated.  Accordingly, Defendant is entitled to summary judgment on these claims.

## C. Interference with FMLA Rights

Plaintiff also alleges that Defendant interfered with his leave rights.  The Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.*, confers two substantive rights upon eligible employees.[11]  The first is the right to take paid leave for protected reasons such as caring for a newborn child, caring for a child or parent with a serious health condition, or on account of the employee's own serious health condition.  *Id.* § 2612(a).  The second is the right to be restored to

---

[11] "The term 'eligible employee' means an employee who has been employed for (i) at least 12 months by the employer with respect to whom leave is requested . . . and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period."  29 U.S.C. § 2611(2)(A).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 25

the same position, or a position with equivalent pay, benefits and terms of

employment, upon returning from such leave.  *Id.* § 2614(a).  These rights are

enforceable through two separate causes of action set forth in 29 U.S.C. § 2615(a).

   The first substantive right under the FMLA prevents an employer from

interfering with the exercise of the employee's right to take leave.  *Id.* § 2615 (a);

29 C.F.R. § 825.220(a).  Such a claim is known as an "interference" or

"entitlement" claim.  *Sanders v. City of Newport*, 657 F.3d 772, 777-78 (9th Cir.

2011).  Pursuant to the FMLA, "[i]t shall be unlawful for any employer to interfere

with, restrain, or deny the exercise of or the attempt to exercise, any right

provided."  29 U.S.C. § 2615(a).  "[E]mployer actions that deter employees'

participation in protected activities constitute 'interference' or 'restraint' with the

employees' exercise of their rights."  *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d

1112, 1124 (9th Cir. 2001); *see* 29 C.F.R. § 825.220(b) (stating that "interference"

includes "not only refusing to authorize FMLA leave, but discouraging an

employee from using such leave").  Accordingly, the FLMA prohibits an employer

from the use of FMLA-protected leave as a "negative factor" in an employment

decision.  29 C.F.R. § 825.220(c); *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1136

(9th Cir. 2003); *Bachelder*, 259 F.3d at 1124.  The Ninth Circuit does not apply the

*McDonnell Douglas* burden shifting framework to interference claims; the plaintiff

1    must simply prove his case with either direct or circumstantial evidence.

2    *Bachelder,* 259 F.3d at 1125.

3         As an initial matter, the parties concede that Plaintiff was an eligible

4    employee and that his use of leave for his disability was protected under the Act.

5         Plaintiff contends Defendant interfered with his right to take FMLA leave

6    when he was terminated after he questioned "management" about why his request

7    to expand his FMLA leave had not been approved.  ECF No. 29 at 19.  In support,

8    Plaintiff highlights that Mr. Jones frequently asked Plaintiff how much leave

9    Plaintiff had remaining, expressed concern that Plaintiff would have to forego

10   weekly manager's meetings for therapy appointments, and terminated Plaintiff

11   merely two days after he asked HR about his FMLA leave.  *Id.* at 18-19.

12        In response, Defendant contends that the sole reason for Plaintiff's

13   termination was Defendant's "loss of trust and confidence in his ability to

14   communicate professionally and effectively with others."  ECF No. 20 at 19.

15   According to Defendant, Mr. Jones freely granted Plaintiff FMLA leave and had

16   no knowledge that Plaintiff application for increased leave was incomplete, nor

17   that Plaintiff inquired as to its incompleteness.  *Id.*  Instead, Defendant highlights

18   that it ultimately terminated Plaintiff due to issues with Plaintiff's communication

19   and professionalism, issues which culminated in Plaintiff's behavior at the June

20   2012 executive meeting.

This Court finds no triable issue as to whether Defendant interfered with Plaintiff's FMLA rights.  While a "close temporal proximity" between an employee taking leave and being terminated can sometimes support an inference of unlawful interference, *see Xin Liu*, 347 F.3d at 1137, this is not such a case.  First, it is undisputed that Defendant granted each and every one of Plaintiff's FMLA leave requests.  Second, besides Plaintiff's unsubstantiated assertion that Mr. Jones inquired on a "fairly regular basis" as to Plaintiff's use of leave, conversations Mr. Jones has no recollection of, there is no indication that Defendant ever encouraged Plaintiff to reduce the frequency of his FMLA leave.  Quite the opposite, Plaintiff was encouraged to apply for additional leave to cover any additional days he would be missing per month due to his pain and corresponding treatment.  Finally, the fact that Mr. Jones expressed "concern" as to Plaintiff missing weekly manager meetings—meetings which, according to Mr. Jones, were moved or which Plaintiff was allowed to miss in light of his conflicting physical therapy appointments, ECF No. 33-2 at 12—does not rise to the level of discouraging Plaintiff from taking leave.  *Cf. Xin Liu*, 347 F.3d at 1134 (supervisor "repeatedly" denied employee's proper FMLA leave requests and also "pressured [her] to reduce her leave time, thus discouraging her from using her FMLA leave").

Second, any inference of interference that could be drawn from the timing of Plaintiff's termination is severely undermined by the substantial evidence

1    Defendant put forward to support its legitimate, non-discriminatory reason for

2    terminating Plaintiff's employment, detailed above.  Accordingly, Defendant is

3    entitled to summary judgment on this claim.

4        **D. Retaliation Under the WLAD**

5        To state a prima face case for unlawful retaliation under the WLAD, a

6    plaintiff must demonstrate that "(1) he or she engaged in statutorily protected

7    activity, (2) an adverse employment action was taken, and (3) there is a causal link

8    between the employee's activity and the employer's adverse action." *Francom v.*

9    *Costco Wholesale Corp.*, 98 Wash. App. 845, 862 (2000).  "The plaintiff need not

10   show that retaliation was the only or 'but for' cause of the adverse employment

11   action, but [rather] that it was at least a substantial factor." *Id.* (citing *Allison v.*

12   *Hous. Auth. of Seattle*, 118 Wash. 2d 79, 96 (1991)).  A causal link can be shown

13   by direct evidence or inferred from circumstantial evidence such as the temporal

14   proximity between the protected activity and the employment decision and whether

15   the employer knew that the employee engaged in protected activities.  *Yartzoff v.*

16   *Thomas,* 809 F.2d 1371, 1376 (9th Cir. 1987).

17       If the plaintiff succeeds in stating a prima facie case, the burden shifts to the

18   defendant to articulate a legitimate, non-discriminatory reason for the adverse

19   employment action.  *Davis v. Fred's Appliance, Inc.*, 171 Wash. App. 348, 364

20   (2012).  This is a burden of production rather than a burden of persuasion; the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 29

defendant need only "set forth *some* evidence that it acted for legitimate, nondiscriminatory reasons." *Id.* (emphasis added). If the defendant successfully articulates such a reason, the burden shifts back to the plaintiff to demonstrate that the defendant's stated reason is mere pretext for retaliatory conduct. *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wash. 2d 46, 70 (1991).

Plaintiff contends that he satisfied the prima facie case for retaliation because (1) requesting an accommodation is a protected activity; (2) he suffered an adverse employment action as a result because he was terminated; and (3) the close proximity in time between when Plaintiff inquired as to an increase in leave and when he was ultimately terminated establishes the necessary causal link. ECF No. 29 at 17. In response, Defendant contends that its sole reason for terminating Plaintiff was its "loss of trust and confidence in his ability to communicate professionally and effectively with others," which culminated in the June 2012 executive meeting. ECF No. 20 at 19.

This Court finds that Plaintiff has established his prima facie case for retaliation. First, Plaintiff's request for an increase in FMLA leave, a reasonable accommodation under the WLAD and ADA, is a statutorily protected activity. Second, Plaintiff suffered an adverse employment action when he was terminated. Finally, the close temporal proximity between Plaintiff's inquiry and his

termination is sufficient to create a causal link between the protected activity and the adverse employment action.  *See Yartzoff*, 809 F.2d at 1376.

However, not unlike Plaintiff's disparate treatment claims, this Court finds Defendant has articulated a legitimate, nondiscriminatory reason for its employment decision; a strongly substantiated explanation Plaintiff has failed to demonstrate is merely pretext.  Construing the facts and all rational inferences in Plaintiff's favor, there is no genuine issue as to any material fact such that a reasonable jury could find for Plaintiff.  Accordingly, this Court finds Defendant is entitled to summary judgment on this claim.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Defendant's Motion for Summary Judgment (ECF No. 20) is **GRANTED.**

The District Court Executive is hereby directed to enter this Order, provide copies to counsel, enter **JUDGMENT** for Defendant on all claims, and **CLOSE** the file.

**DATED** December 8, 2014.



THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 31